1  **WO**

2

3

4

5

6           **IN THE UNITED STATES DISTRICT COURT**

7             **FOR THE DISTRICT OF ARIZONA**

8

| | |
|---|---|
| 9  Samuel Villegas Lopez, | No. CV-98-72-PHX-SMM |
| 10             Petitioner, | <u>DEATH PENALTY CASE</u> |
| 11  vs. | **ORDER RE: PROCEDURAL STATUS** |
| 12  Dora B. Schriro, et al. | **OF SENTENCING CLAIMS** |
| 13             Respondents. | |
| 14 | |

15

16           Petitioner Samuel V. Lopez ("Petitioner") filed a Petition for Writ of Habeas Corpus

17  alleging that he is imprisoned and sentenced to death in violation of the United States

18  Constitution.  This Order addresses the procedural status of Petitioner's sentencing claims.

19           **<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>**

20           On April 27, 1987, a jury convicted Petitioner of first degree murder, sexual assault,

21  kidnapping and burglary.  Maricopa County Superior Court Judge Peter D'Angelo presided

22  over Petitioner's trial and sentenced him to death for the murder and to prison terms for the

23  other offenses.  <u>See</u> <u>State v. Lopez</u>, 163 Ariz. 108, 110, 786 P.2d 959, 961 (1990) (in banc)

24  ("<u>Lopez I</u>").  On direct appeal, the Arizona Supreme Court affirmed Petitioner's convictions

25  and prison sentences, but vacated his death sentence and ordered Petitioner resentenced for

26  the murder.  <u>Id.</u> at 116, 786 P.2d at 967.  On August 3, 1990, Judge D'Angelo  resentenced

27  Petitioner to death and the Arizona Supreme Court affirmed the sentence.  <u>State v. Lopez</u>,

28  175 Ariz. 407, 857 P.2d 1261 (1993) (in banc) ("<u>Lopez II</u>").  Petitioner filed a petition for

1  post-conviction relief ("PCR"), which was denied.  (ROA-PCR 116, 126, 140.)[1]  On

2  December 16, 1997, the Arizona Supreme Court summarily denied Petitioner's petition for

3  review.  (SCT-PCR 6.)

4      Petitioner filed the instant action seeking habeas relief on January 13, 1998, and filed

5  an amended petition on November 16, 1998.  (Dkts. 1, 27.)[2]  Respondents filed an answer

6  regarding the procedural status of the claims, Petitioner filed a traverse, Respondents replied,

7  and Petitioner filed a surreply.  (Dkts. 37, 50, 56, 62.)  On January 7, 2003, the Court ruled

8  on the procedural status of Petitioner's conviction-related claims and ordered briefing on the

9  merits of the remaining conviction claims.  (Dkt. 92.)  The Court simultaneously stayed the

10  sentencing-related claims to allow Petitioner to exhaust a claim in state court alleging a right

11  to jury fact finding for capital eligibility pursuant to <u>Ring v. Arizona</u>, 536 U.S. 584 (2002).[3]

12  (<u>Id.</u>)  That stay was lifted on July 12, 2004.  (Dkt. 144.)

13  **PRINCIPLES OF EXHAUSTION AND PROCEDURAL DEFAULT**

14      Because this case was filed after April 24, 1996, it is governed by the Antiterrorism

15  and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA").  <u>Lindh v. Murphy</u>,

16  521 U.S. 320, 336 (1997); <u>Woodford v. Garceau</u>, 538 U.S. 202, 210 (2003).  The AEDPA

17

18      [1] "ROA-PCR" refers to the record on appeal from post-conviction proceedings
19  prepared for Petitioner's petition for review to the Arizona Supreme Court; "SCT-PCR"
20  refers to the Arizona Supreme Court's docket for that petition for review (Case No. CR-97-
0423-PC).  "SCT-AP I" refers to the Arizona Supreme Court's docket for Petitioner's first
21  direct appeal (Case No. CR-87-0184-AP).  "SCT-AP II" refers to the Arizona Supreme
22  Court's docket for Petitioner's second direct appeal after resentencing (Case No. CR-90-
0247-AP). "RT" refers to reporter's transcripts.  Certified copies of the trial, appeal and post-
23  conviction records, and transcripts, were provided to this Court by the Arizona Supreme
24  Court.  (<u>See</u> Dkt. 57.)

25      [2] "Dkt." refers to the documents in this Court's file.

26      [3] In <u>Schriro v. Summerlin</u>, 542 U.S. 348 (2004), the Supreme Court held that the right
to have a jury find the facts for capital eligibility pursuant to <u>Ring</u> did not apply retroactively
27  to cases, such as Petitioner's, that were already final on direct review.

28

requires that a writ of habeas corpus not be granted unless it appears that the petitioner has exhausted all available state court remedies.  28 U.S.C. § 2254(b)(1); see also Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509 (1982).  To properly exhaust state remedies, the petitioner must "fairly present" his claims to the state's highest court in a procedurally appropriate manner.  O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999).

A claim is "fairly presented" if the petitioner has described the operative facts and the federal legal theory on which his claim is based so that the state courts have a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.  Anderson v. Harless, 459 U.S. 4, 6 (1982); Picard v. Connor, 404 U.S. 270, 277-78 (1971).[4]  Commenting on the importance of fair presentation, the United States Supreme Court has stated:

> If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam).  Following Duncan, the Ninth Circuit Court of Appeals has held that a state prisoner has not "fairly presented" (and thus exhausted) federal claims in state court unless he specifically indicated to that court that the claims were based on federal law.  See, e.g., Lyons v. Crawford, 232 F.3d 666, 669-70 (2000), as amended by 247 F.3d 904 (9th Cir. 2001) (general reference to insufficiency of evidence, right to be tried by impartial jury and ineffective assistance of counsel lacked the specificity and explicitness required to present federal claim); Shumway v. Payne, 223 F.3d 982, 987-88 (9th Cir. 2000) (broad reference to "due process" insufficient to present federal

---

[4] Resolving whether a petitioner has fairly presented his claim to the state court is an intrinsically federal issue to be determined by the federal court.  Wyldes v. Hundley, 69 F.3d 247, 251 (8th Cir. 1995); Harris v. Champion, 15 F.3d 1538, 1556 (10th Cir. 1994).

1    claim); <u>see also</u> <u>Hiivala v. Wood</u>, 195 F.3d 1098, 1106 (9th Cir. 1999) ("The mere similarity

2    between a claim of state and federal error is insufficient to establish exhaustion.").  A

3    petitioner must make the federal basis of a claim explicit either by citing specific provisions

4    of federal law or federal case law, even if the federal basis of a claim is "self-evident," <u>Gatlin</u>

5    <u>v. Madding</u>, 189 F.3d 882, 888 (9th Cir. 1999), or by citing state cases that explicitly analyze

6    the same federal constitutional claim, <u>Peterson v. Lampert</u>, 319 F.3d 1153, 1158 (9th Cir.

7    2003) (en banc).  Such explicit fair presentation must be made not only to the trial or post-

8    conviction court, but to the state's highest court.  <u>Baldwin v. Reese</u>, 541 U.S. 27, 32 (2004).

9    If a petitioner's habeas claim includes new factual allegations not presented to the state court,

10   the claim may be considered unexhausted if the new facts "fundamentally alter" the legal

11   claim presented and considered in state court.  <u>Vasquez v. Hillery</u>, 474 U.S. 254, 260 (1986).

12        A habeas petitioner's claims may be precluded from federal review in either of two

13   ways.  First, a claim may be procedurally defaulted in federal court if it was actually raised

14   in state court but found by that court to be defaulted on state procedural grounds.  <u>Coleman</u>,

15   501 U.S. at 729-30.  Second, a claim may be procedurally defaulted if the petitioner failed

16   to present the claim in any forum and "the court to which the petitioner would be required

17   to present his claims in order to meet the exhaustion requirement would now find the claims

18   procedurally barred."  <u>Coleman</u>, 501 U.S. at 735 n.1.  This is often referred to as "technical"

19   exhaustion because although the claim was not actually exhausted in state court, the

20   petitioner no longer has an available state remedy.  <u>See id.</u> at 732 ("A habeas petitioner who

21   has defaulted his federal claims in state court meets the technical requirements for

22   exhaustion; there are no remedies any longer 'available' to him."); <u>Gray v. Netherland</u>, 518

23   U.S. 152, 161-62 (1996).

24        Rule 32 of the Arizona Rules of Criminal Procedure governs when petitioners may

25   seek relief in post-conviction proceedings and raise federal constitutional challenges to their

26   convictions or sentences in state court.  Rule 32.2 provides, in part:

27

28                                              - 4 -

1         a. Preclusion. A defendant shall be precluded from relief under this

2 rule based upon any ground:

    . . . .

3         (2) Finally adjudicated on the merits on appeal or in any previous

collateral proceeding;

4

5         *(3) That has been waived at trial, on appeal, or in any previous
collateral proceeding.*

6         b. Exceptions. Rule 32.2(a) shall not apply to claims for relief based

on Rules 32.1(d), (e), (f), (g) and (h). When a claim under [these sub-sections]

7 is to be raised in a successive or untimely post-conviction relief proceeding,

the notice of post-conviction relief must set forth the substance of the specific

8 exception and the reasons for not raising the claim in the previous petition or

in a timely manner. If the specific exception and meritorious reasons do not

9 appear substantiating the claim and indicating why the claim was not stated in

the previous petition or in a timely manner, the notice shall be summarily

10 dismissed.

11 Ariz. R. Crim. P. 32.2 (West 2003) (emphasis added). Thus, pursuant to Rule 32.2,

12 petitioners may not be granted relief on any claim which could have been raised in a prior

13 petition for post-conviction relief. Only if a claim falls within certain exceptions

14 (subsections (d) through (h) of Rule 32.1) and the petitioner can justify why the claim was

15 omitted from a prior petition or not presented in a timely manner will the preclusive effect

16 of Rule 32.2 be avoided. Ariz. R. Crim. P. 32.2(b), 32.4(a).

17       Therefore, in the present case, if there are claims which have not been raised

18 previously in state court, the Court must determine whether Petitioner has state remedies

19 currently available to him pursuant to Rule 32. If no remedies are currently available,

20 petitioner's claims are exhausted in a technical sense, but are procedurally defaulted because

21 there is no available state law remedy. Coleman, 501 U.S. at 732, 735 n.1. In addition, if

22 there are claims that were fairly presented in state court but found defaulted on state

23 procedural grounds, such claims also will be found procedurally defaulted in federal court

24 so long as the state procedural bar was independent of federal law and adequate to warrant

25 preclusion of federal review. Harris v. Reed, 489 U.S. 255, 262 (1989). A state procedural

26 default is not independent if, for example, it depends upon an antecedent federal

27 constitutional ruling. See Stewart v. Smith, 536 U.S. 856 (2002) (per curiam). A state bar

28

1   is not adequate unless it was firmly established and regularly followed at the time of

2   application by the state court.  Ford v. Georgia, 498 U.S. 411, 423-24 (1991).

3   Because the doctrine of procedural default is based on comity, not jurisdiction, federal

4   courts retain the power to consider the merits of procedurally defaulted claims.  Reed v.

5   Ross, 468 U.S. 1, 9 (1984).  As a general matter, the Court will not review the merits of

6   procedurally defaulted claims unless a petitioner demonstrates legitimate cause for the failure

7   to properly exhaust in state court and prejudice from the alleged constitutional violation, or

8   shows that a fundamental miscarriage of justice would result if the claim were not heard on

9   the merits in federal court.  Coleman, 501 U.S. at 735 n.1.

10   Ordinarily "cause" to excuse a default exists if a petitioner can demonstrate that "some

11   objective factor external to the defense impeded counsel's efforts to comply with the State's

12   procedural rule."  Id. at 753.  Objective factors which constitute cause include interference

13   by officials which makes compliance with the state's procedural rule impracticable, a

14   showing that the factual or legal basis for a claim was not reasonably available to counsel,

15   and constitutionally ineffective assistance of counsel.  Murray v. Carrier, 477 U.S. 478, 488

16   (1986).  "Prejudice" is actual harm resulting from the alleged constitutional error or violation.

17   Magby v. Wawrzaszek, 741 F.2d 240, 244 (9th Cir. 1984).  To establish prejudice resulting

18   from a procedural default, a habeas petitioner bears the burden of showing not merely that

19   the errors at his trial constituted a possibility of prejudice, but that they worked to his actual

20   and substantial disadvantage, infecting his entire trial with errors of constitutional dimension.

21   United States v. Frady, 456 U.S. 152, 170 (1982).  If a petitioner cannot meet the cause and

22   prejudice standard, the Court still may hear the merits of procedurally defaulted claims if the

23   failure to hear the claims would constitute a "fundamental miscarriage of justice."  Sawyer

24   v. Whitley, 505 U.S. 333 (1992).

25   **DISCUSSION**

26   The sentencing-related claims in Petitioner's amended petition that have not yet been

27

28   - 6 -

reviewed by the Court are Claims 1(C), 1(D), 7-11 and 14-16.[5]  Respondents concede that Petitioner properly exhausted Claims 1(C), 1(D), 8, 15 and 16.  Respondents assert that the balance of Petitioner's sentencing claims, Claims 7, 9-11 and 14, were not fairly presented in state court, or were found waived therein, and are procedurally barred from habeas review on the merits.  Petitioner contends that all of these claims may be reviewed on the merits.

### CLAIM 7:    Failure to Consider Mitigation Evidence

Petitioner alleges that the trial court and Arizona Supreme Court failed to consider and weigh relevant mitigating evidence in violation of the 8th and 14th Amendments. Specifically, Petitioner contends the courts did not consider as statutory or non-statutory mitigating evidence that Petitioner suffered from pathological intoxication and/or conventional intoxication at the time of the crime and that the crime would not have occurred but for that intoxicated state.  Petitioner also alleges that the Arizona courts erred by failing to consider evidence of his good behavior while incarcerated.

On direct appeal, Petitioner argued that the trial judge erred in failing to find the existence of pathological intoxication and/or conventional intoxication at the time of the crime as a statutory mitigating circumstance.  (Lopez II, Opening Br. at 5-10.)  Similarly, Petitioner argued on appeal that the trial court erred by failing to consider his adjustment to incarceration as mitigation.  (Id. at 16.)  The Arizona Supreme Court agreed with the trial court that Petitioner failed to prove pathological intoxication, conventional intoxication, or behavior while incarcerated as mitigating circumstances.  Lopez II, 175 Ariz. at 413-14, 416-17, 857 P.2d at 1267-68, 1270-71.

---

[5] In its order on the procedural status of the conviction-related claims, the Court stated that it was reviewing Claim 6, which alleges mental incompetence for trial and sentencing, only to the extent it related to Petitioner's conviction.  (Dkt. 92 at 27.)  The Court found Claim 6 procedurally barred (id. at 33, 36), and the analysis as to the sentencing-related portion of Claim 6 is the same.  For the sake of clarity, the Court notes that the whole of Claim 6 is procedurally barred and will not be discussed further in this order.  The Court will not review Claim 13 because it was withdrawn by Petitioner.  (See dkts. 93, 100.)

1    First, Petitioner did not fairly present Claim 7 in state court to the extent it alleges

2    error by the Arizona Supreme Court.  In order to give the state's highest court the opportunity

3    to rule on a claim of error arising during Petitioner's direct appeal, the proper method is to

4    file a motion for reconsideration with the Arizona Supreme Court.  See Ariz. R. Crim. P.

5    31.18(b) ("Any party desiring reconsideration of a decision of an appellate court may file a

6    motion for reconsideration in the appellate court within fifteen days after the filing of a

7    decision by the appellate court."); Correll v. Stewart, 137 F.3d 1404, 1418 (9th Cir. 1998)

8    (finding procedural default of claim based on error of the Arizona Supreme Court where

9    petitioner failed to file motion for reconsideration, which is "an avenue of relief that the

10   Arizona Rules of Criminal Procedure clearly outline.").  Although Petitioner filed a motion

11   for reconsideration, he did not argue these issues; therefore, he did not fairly present the

12   portion of the claim alleging error by the supreme court.  (See SCT-AP II 41.)

13   Second, regarding the allegation of trial court error, Petitioner did not raise this claim

14   in state court as a federal constitutional claim nor cite any cases relying on federal law.[6]

15   (Lopez II, Opening Br. at 5-10, 16.)  Therefore, this portion of the claim was not fairly

16   presented on appeal.  See Duncan, 513 U.S. at 365-66 (holding that petitioner must alert

17   court to federal nature of the claim); Gatlin, 189 F.3d at 888 (requiring federal basis of a

18   claim to be explicit either by citing specific provisions of federal law or federal case law).

19   Even if not fairly presented, Petitioner argues that the Arizona Supreme Court's

20   independent review of his sentence exhausted Claim 7.  The Arizona Supreme Court has

21   repeatedly stated that it independently reviews each capital case to determine whether the

22

23          [6] Petitioner argues that the Arizona Supreme Court discussed federal constitutional

24   caselaw in resolving Claim 7, thereby exhausting the claim.  The portion of the state opinion
     that Petitioner cites as relying on federal law addresses a separate claim that is not

25   encompassed by Claim 7–that Arizona statutory law unconstitutionally limited the trial
     court's ability to consider intoxication as non-statutory mitigation (Lopez II, Opening Br. at

26   11-12).  Lopez II, 175 Ariz. at 414-16, 857 P.2d at 1268-70.  That issue is not before the

27   Court and is irrelevant to the exhaustion of Claim 7.

28                                            - 8 -

1   death sentence is appropriate. In State v. Gretzler, 135 Ariz. 42, 54, 659 P.2d 1, 13 (1983),

2   the court stated that the purpose of independent review is to assess the presence or absence

3   of aggravating and mitigating circumstances and the weight to give to each. See also State

4   v. Blazak, 131 Ariz. 598, 604, 643 P.2d 694, 700 (1982). To ensure compliance with

5   Arizona's death penalty statute, the court reviews the record regarding aggravation and

6   mitigation findings, and then decides independently whether the death sentence should be

7   imposed. State v. Brewer, 170 Ariz. 486, 493-94, 826 P.2d 783, 790-91 (1992). The Arizona

8   Supreme Court has also said that in conducting its review, it determines whether the sentence

9   of death was imposed under the influence of passion, prejudice, or any other arbitrary factors.

10  State v. Richmond, 114 Ariz. 186, 196, 560 P.2d 41, 51 (1976), sentence overturned on other

11  grounds, Richmond v. Cardwell, 450 F. Supp. 519 (D. Ariz. 1978). Arguably, such a review

12  rests on both state and federal grounds. See Brewer, 170 Ariz. at 493, 826 P.2d at 790

13  (finding that statutory duty to review death sentences arises from need to ensure compliance

14  with constitutional safeguards imposed by the 8th and 14th amendments); State v. Watson,

15  129 Ariz. 60, 63, 628 P.2d 943, 946 (1981) (discussing Gregg v. Georgia, 428 U.S. 153

16  (1976) and Godfrey v. Georgia, 446 U.S. 420 (1980) and stating that independent review of

17  death penalty is mandated by the U.S. Supreme Court and necessary to ensure against

18  arbitrary and capricious application).

19        While the state court's independent review does not encompass any and all alleged

20  constitutional error at sentencing, the Court finds that it did encompass Petitioner's claim that

21  the trial court violated the 8th and 14th Amendments by failing to consider all proffered

22  mitigating evidence. See Watson, 129 Ariz. at 63-64, 628 P.2d at 946-47 (citing Godfrey as

23  support for decision to overturn death sentence based on an independent re-weighing of the

24  aggravating and mitigating factors). In the Arizona Supreme Court's written opinion, it

25  independently reviewed the evidence regarding conventional and pathological intoxication,

26  and Petitioner's conduct during incarceration as possible mitigation. Lopez II, 175 Ariz. at

27  412-17, 857 P.2d at 1266-71. The court then conducted an independent review of the entire

28

1   record and weighed the aggravating and mitigating factors and concluded that the trial court

2   did not err in its imposition of the death penalty. <u>Id.</u> at 417, 857 P.2d at 1271. The supreme

3   court's actual review of the trial court's consideration and weighing of the mitigating

4   evidence sufficiently exhausted Claim 7 to the extent it alleges trial court error. <u>See</u>

5   <u>Sandstrom v. Butterworth</u>, 738 F.2d 1200, 1206 (11th Cir. 1984) ("[t]here is no better

6   evidence of exhaustion than a state court's actual consideration of the relevant constitutional

7   issue"). Therefore, this portion of Claim 7 will be reviewed on the merits.

8       In contrast, Petitioner's allegation of error by the Arizona Supreme Court could not

9   have been exhausted during the supreme court's appellate sentencing review, because it is

10  during that review that the error is alleged to have occurred. If Petitioner were to return to

11  state court now to litigate the portion of Claim 7 alleging error by the Arizona Supreme

12  Court, it would be found waived and untimely under Rules 32.2(a)(3)[7] and 32.4(a) of the

13

14      [7] To the extent the Court finds throughout this Order that Petitioner does not have an
available remedy in state court, because claims or portions of claims would be precluded as
15  waived pursuant to Rule 32.2(a)(3), Petitioner does not assert that any exceptions to
preclusion are applicable. <u>See</u> <u>Beaty v. Stewart</u>, 303 F.3d 975, 987 & n.5 (9th Cir. 2002)
16  (finding no state court remedies and noting that petitioner did not raise any exceptions to
Rule 32.2(a)). First, with the exception of Claim 10, Petitioner does not assert the application
17  of any of the preclusion exceptions enumerated in Rule 32.2(b)(2)–expired sentence, newly
discovered material facts, no fault untimely appeal or PCR proceeding, significant change
18  in the law, or actual innocence of crime or death sentence–and the Court finds that none of
them apply. <u>See</u> Ariz. R. Crim. P. 32.2(b)(2); 32.1(d) - (h). Second, Petitioner does not
19  argue that any of the claims are of sufficient constitutional magnitude such that they cannot
be waived absent a personal knowing, voluntary and intelligent waiver. <u>Cf.</u> <u>Cassett v.</u>
20  <u>Stewart</u>, 406 F.3d 614, 622 (9th Cir. 2005) (addressing waiver because raised by petitioner).
21  The Court finds, as to all of the claims in this Order for which the Court determines there is
no available remedy in state court pursuant to Rule 32.2(a)(3), that none of those claims fall
22  within the limited framework of claims requiring a knowing, voluntary and intelligent
waiver. <u>See</u> Ariz. R. Crim. P. 32.2(a)(3) cmt. (West 2004) (noting that most claims of trial
23  error do not require a personal waiver); <u>Stewart v. Smith</u>, 202 Ariz. 446, 449, 46 P.3d 1067,
24  1070 (2002) (identifying the right to counsel, right to a jury trial and right to a 12-person jury
under the Arizona Constitution as the type of claims that require personal waiver); <u>see also</u>
25  <u>State v. Espinosa</u>, 200 Ariz. 503, 505, 29 P.3d 278, 280 (Ct. App. 2001) (withdrawal of plea
26
27                                                                          (continued...)

28                                            - 10 -

1    Arizona Rules of Criminal Procedure because it does not fall within an exception to

2    preclusion.  See Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h).  Similarly, the fifteen-day deadline

3    for the filing of a motion for reconsideration in the Arizona Supreme Court is long past.

4    Therefore, this portion of Claim 7 is technically exhausted but procedurally defaulted.

5         As cause to overcome the default, Petitioner asserts the ineffectiveness of appellate

6    counsel.  Before ineffectiveness may be used to establish cause for a procedural default it

7    must have been presented to the state court as an independent claim.  Murray, 477 U.S. at

8    489.  Petitioner did not raise any claims of ineffective assistance of appellate counsel in his

9    PCR petition or supplemental PCR petition.  (ROA-PCR 116, 126.)  Ineffectiveness claims

10   regarding appellate counsel are now foreclosed in state court by Arizona Rule of Criminal

11   Procedure 32.2(a)(3) and 32.4(a).  Because the Arizona Supreme Court has not had a fair

12   opportunity to rule on Petitioner's ineffectiveness claims alleged as cause, and Petitioner may

13   not exhaust those claims now, such claims are technically exhausted but procedurally

14   defaulted.  See Gray, 518 U.S. at 161-62; Coleman, 501 U.S. at 735 n.1.  Therefore,

15   Petitioner's allegations of ineffective appellate counsel cannot constitute cause to excuse the

16   default.  See Edwards v. Carpenter, 529 U.S. 446, 453 (2000) (ineffective counsel as cause

17   can itself be procedurally defaulted).  Because Petitioner has not established cause to

18   overcome the default, the Court need not analyze prejudice.  See Thomas v. Lewis, 945 F.2d

19   1119, 1123 n.10 (9th Cir. 1991).

20        Petitioner argues that a fundamental miscarriage of justice will occur if this claim is

21   not reviewed on the merits.  Specifically, Petitioner argues:  (1) he was not competent to be

22   sentenced, (2) he did not have the requisite mental state to support the (F)(6) aggravating

23   circumstance, and (3) had the sentencer been presented with all the mitigating evidence now

24   _____

25        [7](...continued)

26   offer in violation of due process not a claim requiring personal waiver); but cf. Cassett, 406
     F.3d at 622 (finding claim not defaulted because unclear whether personal waiver would be
27   required under state law).

28                                          - 11 -

known it would not have imposed a death sentence.  To establish a fundamental miscarriage of justice based on innocence of the death penalty, Petitioner must show by clear and convincing evidence that, but for a constitutional error, no reasonable factfinder would have found the existence of any aggravating circumstance or some other condition of eligibility for the death sentence under the applicable state law.  Sawyer, 505 U.S. at 336.  In Arizona, eligibility for the death penalty is premised on the existence of one or more statutory aggravating factors.   See LaGrand v. Stewart, 133 F.3d 1253, 1262 (9th Cir. 1998); Villafuerte v. Stewart, 111 F.3d 616, 629 (9th Cir. 1997).

First, lack of competency to be sentenced does not establish a fundamental miscarriage of justice.  While incompetence may constitute an independent claim that a sentence is unconstitutional or could delay a court's ability to sentence a defendant, it is not related to eligibility for the death penalty.  In other words, competency impacts a court's ability to impose any sentence, but does not provide any basis for distinguishing between a sentence of death or life imprisonment.  Second, Petitioner's state of mind is only relevant to the (F)(6) prong regarding heinousness and depravity, while the cruelty prong focuses on the suffering of the victim.  See Lopez II, 175 Ariz. at 411-12, 857 P.2d at 1265-66.  As pointed out by the Arizona Supreme Court, even if the crime was not heinous and depraved, the (F)(6) factor would still be satisfied solely by the cruelty finding.  Id. at 411, 857 P.2d at 1265.  Therefore, even if Petitioner did not have the state of mind necessary to support the heinous and depraved finding, he would remain eligible for the death penalty based on the court's cruelty finding which is not premised on his mental state.

Third, Petitioner has argued only that he has additional mitigation that should be considered, but he has not demonstrated that no reasonable factfinder would have found the aggravating circumstance applied by the state courts; thus, he remains eligible for the death penalty.  See Sawyer, 505 U.S. at 347 (focus is on eligibility, not on additional mitigation); LaGrand, 133 F.3d at 1262 ("actual innocence of the death penalty must focus on eligibility for the death penalty, and not on additional mitigation"); Villafuerte, 111 F.3d at 629.

- 12 -

1  Therefore, none of Petitioner's arguments establish a fundamental miscarriage of justice

2  based on innocence of the death penalty.

3      Because Petitioner has not established cause and prejudice or a fundamental

4  miscarriage of justice to overcome the default of the portion of Claim 7 alleging error by the

5  Arizona Supreme Court, it will be dismissed as procedurally barred.

6      **CLAIM 9:    Consideration of Prejudicial Sentencing Information**

7      Petitioner contends that the sentencing court was improperly influenced by victim

8  impact statements, included in the presentence report and conveyed in other manners, in

9  violation of the 8th and 14th Amendments.  (Dkt. 27 at 25-26.)  This claim was not fairly

10  presented on appeal.[8]  When raised in the PCR petition, the PCR court found it precluded as

11  waived for failing to raise the issue on direct appeal.  (ROA-PCR 140.)

12      Petitioner argues that Claim 9 was exhausted by the Arizona Supreme Court's

13  independent sentencing review.  As discussed with respect to Claim 7, the supreme court's

14  independent sentencing review does not exhaust all constitutional error but may exhaust

15  certain claims, to the extent they relate to the existence of aggravating and mitigating factors

16  and the weight given to them.  See Gretzler, 135 Ariz. at 54, 659 P.2d at 13; Blazak, 131

17  Ariz. at 604, 643 P.2d at 700; Brewer, 170 Ariz. at 493-94, 826 P.2d at 790-91.  In Brewer,

18  the Arizona Supreme Court observed that it has a duty to determine the propriety of the death

19  penalty and this decision "is guided, above all, by the state's narrowly construed statutes

20  specifying the limited circumstances for which a defendant may be deemed death-eligible."

21  170 Ariz. at 494, 826 P.2d at 791.  In reviewing the existence of aggravating and mitigating

22  evidence and the weighing of the two, the Arizona Supreme Court would have no cause to

23  consider whether victim impact evidence was considered by the trial court.  Thus, this claim

24

25      [8]  Petitioner argues that he raised this claim on appeal; however, he raised it only on
    his first appeal.  Because the Arizona Supreme Court vacated Petitioner's death sentence on
26  his first appeal without addressing this claim, see Lopez I, 163 Ariz. at 116, 786 P.2d at 967,
    and Petitioner did not re-raise the claim in his second appeal addressing the death sentence
27  imposed on remand (see Lopez II, Opening Br.), the claim was not fairly presented.

28                              - 13 -

was not encompassed within the statutory review as articulated by the Arizona Supreme Court. Further, a review of the court's opinion makes clear that this claim was not reviewed by the court. See Lopez II, 175 Ariz. 407, 857 P.2d 1261. This claim was not exhausted by independent sentencing review, and the PCR court's procedural default ruling bars review absent a showing of cause and prejudice, or a fundamental miscarriage of justice.

As cause, Petitioner alleges ineffective assistance of appellate counsel. As discussed with respect to Claim 7, because Petitioner did not present and exhaust such a claim in state court it cannot serve as cause. The Court rejects Petitioner's arguments regarding fundamental miscarriage of justice for the same reasons discussed with respect to Claim 7. Claim 9 will be dismissed as procedurally barred.

### CLAIM 10: Brady Violation Regarding Rebuttal Evidence at Sentencing

Petitioner alleges the prosecution suppressed exculpatory evidence that he could have used to rebut aggravation evidence presented at sentencing, in violation of the 6th, 8th and 14th Amendments. Specifically, Petitioner alleges that his presentence report ("PSR") referenced a November 3, 1986 sexual assault allegation against him. Petitioner asserts that the prosecution suppressed evidence that charges were not filed against him for that alleged assault because the police thought the victim was not credible. Petitioner concedes that he did not present Claim 10 to the state courts, and Respondents contend the claim is precluded.

Background

At the presentence hearing for Petitioner's resentencing, the prosecution did not offer any aggravation evidence, relying solely on the trial evidence and the fact that the Arizona Supreme Court had affirmed the (F)(6) aggravating factor on Petitioner's first direct appeal. (RT 7/13/90 AM at 4-5.) Petitioner's counsel submitted the police reports from the November 3 alleged sexual assault as exhibit 7 for the presentence hearing because they were used in the deposition of Petitioner's expert, Dr. Bendheim, to support his analysis regarding pathological intoxication; Dr. Bendheim's testimony was presented for the presentence hearing by way of video deposition. (ROA-PCR 96 at 1-2; RT 7/13/90 PM at 5-6.) In

rebuttal to Petitioner's mitigation presentation, the prosecution put on expert testimony that the alleged sexual assault indicated that Petitioner did not experience pathological intoxication. (RT 7/13/90 PM at 32-34.)

In the state's sentencing memorandum, the alleged sexual assault is discussed to rebut Dr. Bendheim's hypothesis that the incident demonstrated pathological intoxication. (ROA-PCR 98 at 4-5.) Petitioner's PSR noted that while he was under arrest for the sexual assault allegation he was investigated and arrested for the murder. (Id. 99 at 1, 7.) At the sentencing hearing, the court did not mention the alleged sexual assault. (RT 8/13/90.) In its Special Verdict, the court acknowledged that it had reviewed the presentence report, but did not mention the alleged sexual assault. (ROA-PCR 103.) The court found one aggravating factor, that the murder was especially cruel, heinous and depraved. (Id. at 3-6.) On appeal, the Arizona Supreme Court reiterated the opinion of the state's expert at sentencing that the sexual assault was inconsistent with pathological intoxication and affirmed the trial court's finding that Petitioner had not established pathological intoxication as a mitigating factor. Lopez II, 175 Ariz. at 413-14, 857 P.2d at 1267-68.

During the course of these proceedings, Petitioner's counsel asserts they discovered additional material from the police file regarding the alleged sexual assault.[9] The allegedly exculpatory evidence is a handwritten report summarizing why the victim was not credible and the state should decline prosecution of Petitioner for the alleged sexual assault.

Exhaustion

Petitioner argues that he has an available remedy for this claim in state court because the facts in support of the claim are newly discovered. Arizona's PCR preclusion rule, Rule 32.2(a), does not apply to a claim based on "newly discovered material facts," if the facts

---

[9] Petitioner did not submit a copy of the alleged Brady material until he filed his surreply. Respondents have not had an opportunity to respond to this specific evidence; however, for the purposes of this order, the Court will accept as true Petitioner's assertion that the report was recently obtained.

1  probably would have changed the verdict or sentence. See Ariz. R. Crim. P. 32.2(b), 32.1(e).

2  Evidence is "material" if it is relevant "and goes to substantial matters in dispute or has a

3  legitimate and effective influence on the decision of the case." State v. Orantez, 183 Ariz.

4  218, 221-22, 902 P.2d 824, 827-28 (1995).

5        The new evidence presented by Petitioner is not material because it is not relevant to

6  a substantial matter and it is not probable that it would have changed the sentence. "Non-

7  statutory" aggravation evidence is not recognized in Arizona; the only aggravating

8  circumstances allowed to support a death sentence are enumerated in the governing statute,

9  A.R.S. § 13-703(F), and the sentencing court may only consider evidence in aggravation that

10 tends to establish a statutory aggravating factor. State v. Gulbrandson, 184 Ariz. 46, 66, 906

11 P.2d 579, 599 (1995); State v. Atwood, 171 Ariz. 576, 673, 832 P.2d 593, 656 (1992),

12 overturned on other grounds by State v. Nordstrom, 200 Ariz. 229, 25 P.3d 717 (2001).

13 Absent evidence to the contrary, a judge is presumed to focus only on relevant sentencing

14 factors. State v. Beaty, 158 Ariz. 232, 244, 762 P.2d 519, 531 (1988). There is nothing in

15 the record to suggest that the trial court relied on the alleged sexual assault in finding the one

16 aggravating factor, that the crime was especially cruel, heinous and depraved. Moreover,

17 credibility is a jury question; police officers' reports are advisory to the prosecutor and

18 nothing more. And, based on hearsay, the police officer could not testify to another person's

19 credibility. Because the alleged sexual assault was not relevant to any statutory aggravating

20 factor, and there is no evidence to the contrary, the trial judge must be presumed not to have

21 relied on the alleged assault as aggravation. Therefore, Petitioner's ability to rebut such

22 evidence is not relevant to the sentence he received.[10]

23       In sum, the "newly discovered evidence" is not material and would not probably have

24

25     [10]  As pointed out by Respondents, Petitioner's counsel relied on the alleged sexual

26 assault more heavily as part of his mitigation case than did the prosecutor. Further, because
the assault was never charged and proven, Petitioner's counsel could have chosen to

27 challenge it as unadjudicated and irrelevant without the new evidence.

28                                         - 16 -

changed the sentence. Because the evidence does not qualify as "newly discovered material facts" under Rule 32.1(e), Petitioner does not have an available remedy in state court. If he were to return to state court now, the claim would be found waived and untimely under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure because it does not fall within an exception to preclusion. See Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h). Claim 10 is technically exhausted but procedurally defaulted, and will be procedurally barred absent a showing of cause and prejudice or fundamental miscarriage of justice. The Court rejects Petitioner's arguments regarding fundamental miscarriage of justice for the reasons discussed as to Claim 7.

Cause and Prejudice

Petitioner argues that the suppression of the evidence regarding the alleged sexual assault is cause for the default, and that he was prejudiced by the Brady violation because his sentence probably would have been different if the evidence had been disclosed. The Court finds that, even if he could establish cause, Petitioner cannot establish prejudice.

"Prejudice" requires a showing that Petitioner was actually harmed by the alleged constitutional error. Magby v. Wawrzaszek, 741 F.2d 240, 244 (9th Cir. 1984). Therefore, the Court reviews the merits of Petitioner's Brady allegation. Before this Court may conclude that Brady error is established, the non-disclosure of evidence must be material. Kyles v. Whitley, 514 U.S. 419, 433 (1995). The test for materiality is whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). "A reasonable probability of a different result is accordingly shown when the government's evidentiary suppression undermines confidence in the outcome of the trial." Kyles, 514 U.S. at 434. For the reasons discussed above with respect to the Arizona test for whether evidence qualifies as "newly discovered material facts," the Court concludes that there is not a reasonable probability that the sentence would have been different if the evidence at issue had been disclosed. The evidence of the alleged sexual assault was not relevant to statutory

1   aggravation and there is no evidence it was considered.  Petitioner fails to establish there was

2   a Brady violation; therefore, he was not prejudiced by the alleged error.

3       Petitioner cannot establish cause and prejudice to overcome the default, therefore,

4   Claim 10 is procedurally barred.  In the alternative, the Court's review of the alleged Brady

5   violation demonstrates that Claim 10 is without merit.

6       **CLAIM 11:  Consideration of Unadjudicated Crimes at Sentencing**

7       Petitioner alleges that the trial court violated his rights under the 6th, 8th and 14th

8   Amendments by considering unadjudicated crimes at his sentencing proceeding.  (Dkt. 27

9   at 27.) Petitioner concedes he did not present Claim 11 in state court as an independent claim

10  but argues it was fairly presented because the substantive allegations were included in an

11  ineffective assistance of counsel claim asserted in his PCR petition.  The legal basis for

12  Claim 11 is fundamentally different than an ineffective assistance of counsel claim based on

13  a failure to raise the claim, therefore, the ineffective assistance claim did not fairly present

14  Claim 11.  See Anderson, 459 U.S. at 6 (fair presentation requires a description of the federal

15  legal theory on which a claim is based).

16      Regardless of fair presentation, Petitioner argues that the Arizona Supreme Court's

17  independent sentencing review exhausted Claim 11.  The scope of the independent review

18  conducted by the Arizona Supreme Court is discussed above with respect to Claims 7 and

19  9.  In sum, the purpose of independent review is to assess the presence or absence of

20  aggravating and mitigating circumstances and the weight to give to each.  See Gretzler, 135

21  Ariz. at 54, 659 P.2d at 13; Blazak, 131 Ariz. at 604, 643 P.2d at 700.  As with Claim 9, the

22  statutory review as articulated by the Arizona Supreme Court does not encompass a

23  determination of whether the trial court may have considered improper evidence.  Further,

24  a review of the Arizona Supreme Court's opinion makes clear that this claim was not

25  reviewed by the court.  See Lopez II, 175 Ariz. 407, 857 P.2d 1261.  Thus, Claim 11 was not

26  exhausted by independent sentencing review.

27      If Petitioner were to return to state court now to litigate Claim 11 it would be found

28                                    - 18 -

waived and untimely under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure because it does not fall within an exception to preclusion.  See Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h).   Therefore, Claim 11 is technically exhausted but procedurally defaulted, and will be procedurally barred unless Petitioner establishes cause and prejudice or a fundamental miscarriage of justice to overcome the procedural default.  The Court rejects Petitioner's arguments regarding cause based on ineffective assistance of appellate counsel and fundamental miscarriage of justice for the same reasons discussed in Claim 7. Petitioner also argues that his appellate counsel had reason to believe that this claim would be reviewed as part of the Arizona Supreme Court's independent sentencing review, therefore, he could not know that he needed to comply with the rule requiring that it be raised.  Cause requires showing that something prevented Petitioner or his counsel from complying with the rule.  Coleman, 501 U.S. at 753.  Petitioner has not suggested that anything prevented Petitioner's counsel from presenting this claim on appeal; such an argument is particularly unconvincing in light of this Court's finding that Claim 11 was not encompassed in the independent sentencing review.  Absent cause, there is no need to reach the issue of prejudice.  Thomas, 945 F.2d at 1123 n.10.  Claim 11 will be dismissed as procedurally barred.[11]

### CLAIM 14:  Right to Jury Trial at Sentencing by Initiative

Petitioner argues that a 1918 initiative measure, passed by Arizona voters, provided individuals convicted of first degree murder the right to sentencing by a jury.  Petitioner alleges that denial of jury sentencing violated his right to due process in violation of the 6th, 8th and 14th Amendments.

Petitioner raised this argument on direct appeal citing the Arizona Constitution and Arizona law.  (SCT-AP I, 33A.)  Petitioner did not fairly present the claim as a violation of

---

[11]  In light of the Court's analysis of Claim 10–that the trial court must be presumed not to have relied on the unadjudicated sexual assault– Claim 11 would likely be found meritless even if it were not defaulted.

- 19 -

the federal constitution.  The Arizona Supreme Court denied the claim on the merits based solely on Arizona law.  Lopez I, 163 Ariz. at 115-16, 786 P.2d at 966-67.  Claim 14 was not fairly presented as a federal claim in state court nor exhausted by the state court's consideration of the claim as a state law matter.  If Petitioner were to return to state court now to litigate Claim 14 it would be found waived and untimely under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure because it does not fall within an exception to preclusion.  See Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h).  Therefore, Claim 14 is technically exhausted but procedurally defaulted, and will be procedurally barred unless Petitioner establishes cause and prejudice or a fundamental miscarriage of justice to overcome the procedural default.

As cause, Petitioner asserts the same arguments presented as to Claim 11, and they are rejected for the same reasons.  Similarly, the Court rejects Petitioner's arguments regarding fundamental miscarriage of justice for the same reasons discussed as to Claim 7. Claim 14 will be dismissed as procedurally barred.

### CLAIM 15:  Failure to Channel the Sentencer's Discretion

Petitioner argues that the aggravating circumstance applied in his case, A.R.S. § 13-703(F)(6), does not narrow the scope of capital offenses and there are no objective standards for weighing aggravating and mitigating circumstances, which violates his rights under the 8th and 14th Amendments.  Both parties agree that Claim 15 was properly exhausted; however, it is meritless.  The United States Supreme Court has determined that Arizona's procedures, in effect at the time of Petitioner's sentence, regarding the weighing of mitigation and aggravation provided sufficient individual sentencing consideration to pass constitutional review.  See Walton v. Arizona, 497 U.S. 639, 651-52 (1990), overturned on other grounds by Ring v. Arizona, 536 U.S. 584 (2002).  Similarly, the aggravating circumstance applied to Petitioner is constitutionally determinate and narrow, and Arizona's procedures for the application of the aggravating circumstance adequately narrow and channel the sentencer's discretion.  See id. at 653-56; Lewis v. Jeffers, 497 U.S. 764, 777-80 (1990) (stating that

<u>Walton</u> holds that Arizona's (F)(6) aggravating circumstance, as construed by the Arizona Supreme Court, adequately channels and limits the sentencer's discretion by clear and objective standards).  Petitioner is not entitled to habeas relief on Claim 15.

**CLAIM 16:  Denied Proportionality Review of Sentence**

Petitioner alleges that a proportionality review of his death sentence by the Arizona Supreme Court was required by the 8th and 14th Amendments, and the lack of such review on his second appeal violated his rights.  Petitioner alleges proportionality review was required on his second appeal, even if it would not otherwise be mandated, because such a review was conducted on his first appeal.  Further, Petitioner alleges that he received ineffective assistance of counsel at trial and on appeal because his counsel was not on notice of the class of cases to which his case would be compared.  Both parties agree that Claim 16 was properly exhausted; however, it is meritless.  There is no federal right to proportionality review where state law does not provide for such review.  <u>Pulley v. Harris</u>, 465 U.S. 37, 43-44, 50-51 (1984).   In <u>State v. Salazar</u>, 173 Ariz. 399, 416-17, 844 P.2d 566, 583-84 (1992) (in banc), the Arizona Supreme Court held that proportionality reviews would no longer be conducted in death penalty cases.  Because Petitioner possessed no constitutional right to a proportionality review at the time of his second appeal, the Court will dismiss Claim 16 as meritless.

## **CONCLUSION**

The Court finds that Claims 7 (in part), 9-11 and 14 are procedurally barred and will be dismissed.  In the alternative, the Court finds that Claim 10 is without merit.  Claims 15 and 16 are properly exhausted, but are meritless on their face and will be dismissed.  Claims 1(C), 1(D), 7 (in part) and 8 will be briefed on the merits and addressed in a future order.

Accordingly,

**IT IS HEREBY ORDERED** that the following claims are **DISMISSED WITH PREJUDICE**: (a) Claims 6 (as to the sentencing-related allegation), 7 (as to the allegation of error by the Arizona Supreme Court), 9-11 and 14 as procedurally barred; and (b) Claims

10 (in the alternative), 15 and 16 as meritless.

**IT IS FURTHER ORDERED** that, no later than forty-five (45) days following entry of this Order, Petitioner shall file a memorandum regarding the merits of Claims 1(C), 1(D), 7 (as to the allegation of error by the trial court) and 8 ("Merits Brief"). The Merits Brief shall specifically identify and apply appropriate AEDPA standards of review as to *each claim for relief*, not simply restate facts and argument contained in the Amended Petition. Petitioner shall also identify in the Merits Brief: (1) each claim for which further evidentiary development is sought; (2) the facts or evidence sought to be discovered, expanded or presented at an evidentiary hearing; (3) why such evidence was not developed in state court; and (4) why the failure to develop the claim in state court was not the result of lack of diligence, in accordance with the Supreme Court's decision in <u>Williams v. Taylor</u>, 529 U.S. 420 (2000).

**IT IS FURTHER ORDERED** that, no later than forty-five (45) days following the filing of the Merits Brief, Respondents shall file a Response ("Merits Response").

**IT IS FURTHER ORDERED** that no later than thirty (30) days following the filing of Respondents' Merits Response, Petitioner may file a Reply.

1
2
3
4
5

     **IT IS FURTHER ORDERED** that if, pursuant to LRCiv 7.2(g), Petitioner or Respondents file a Motion for Reconsideration of this Order, such motion shall be filed within fifteen (15) days of the filing of this Order.  The filing and disposition of such motion shall not toll the time for the filing of the Merits Brief, Response or Reply as scheduled in this Order.

6
7
8

     **IT IS FURTHER ORDERED** that the Clerk of Court forward a copy of this Order to all counsel of record and the Clerk of the Arizona Supreme Court, 1501 W. Washington, Phoenix, Arizona 85007-3329.

9

     DATED this 3rd day of November, 2005.

10
11
12
13
14
15

Stephen M. McNamee
Chief United States District Judge

16
17
18
19
20
21
22
23
24
25
26
27
28