1  **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                     **FOR THE DISTRICT OF ARIZONA**

8

9  Samuel Villegas Lopez,                  )  No. CV-98-72-PHX-SMM
                                           )
10              Petitioner,                )  <u>DEATH PENALTY CASE</u>
                                           )
11  v.                                     )
                                           )  **ORDER DENYING MOTION FOR**
12                                         )  **RELIEF FROM JUDGMENT**
    Charles L. Ryan, et al.,               )
13                                         )
                Respondents.               )
14                                         )
                                           )

15

16          Before the Court is Petitioner's motion for relief from judgment pursuant to Rule

17  60(b) of the Federal Rules of Civil Procedure or in the alternative petition for writ of habeas

18  corpus. (Doc. 237.) The motion asserts that the Supreme Court's recent decision in *Martinez*

19  *v. Ryan*, 132 S. Ct. 1309 (2012), provides a proper ground for this Court to reopen

20  Petitioner's federal habeas proceeding.  Respondents oppose the motion. (Doc. 246.)  For

21  the reasons that follow, the motion is denied.

22                              <u>**BACKGROUND**</u>

23          This case derives from the 1986 murder of 59-year-old Estafana Holmes in her

24  Phoenix apartment.  Police found the victim's partially nude body after conducting a "check

25  welfare" call.  She had been blindfolded with her pajama pants, and her mouth was stuffed

26  with a scarf.  The apartment was blood-spattered and in disarray with broken and displaced

27  furnishings. The victim's throat had been sliced, and she had been stabbed more than twenty

28  times in her left breast, upper chest, and lower abdomen.  Seminal fluid was found in both

her vagina and anus.

Petitioner was seen in the neighborhood the night before the crime as well as in the early morning after the murder, looking wet as if he had just bathed. While under questioning several days later about an unrelated matter, Petitioner asked about a woman who had been stabbed and had her throat slashed. Information that the victim's throat had been cut had never been publically released. Petitioner's fingerprints matched prints found in the victim's apartment, and his bodily fluids were consistent with those obtained from her body.

In 1987, a jury convicted Petitioner of first degree murder, sexual assault, kidnapping, and burglary. The trial court sentenced him to death for the murder after finding the existence of two aggravating factors: a prior felony conviction "involving the use or threat of violence on another person," Ariz. Rev. Stat. § 13-703(F)(2) (1992) (transferred and renumbered to § 13-751), and commission of the offense in an especially heinous, cruel, or depraved manner, *id.* § 13-703(F)(6) (1992). On direct appeal, the Arizona Supreme Court affirmed the convictions but vacated the "prior felony conviction" aggravating factor and remanded for resentencing on the murder count. *State v. Lopez*, 163 Ariz. 108, 116, 786 P.2d 959, 967 (1990).

Resentencing took place in 1990. The trial court again sentenced Petitioner to death, finding that the murder was committed in an especially cruel, heinous, or depraved manner and that no mitigating circumstances were sufficient to warrant leniency. On appeal, the Arizona Supreme Court affirmed. *State v. Lopez*, 175 Ariz. 407, 857 P.2d 1261 (1993). With regard to mitigation, the court found *inter alia* that Petitioner had failed to prove that his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired at the time of the offense as a result of intoxication, *see* Ariz. Rev. Stat. § 13-703(G)(1) (1992) (transferred and renumbered to § 13-751), or that he suffered from a condition known as "pathological intoxication."

Petitioner then sought state postconviction relief ("PCR") under Rule 32 of the

Arizona Rules of Criminal Procedure. Among other claims in his PCR petition, Petitioner asserted that trial counsel had been ineffective in failing to provide his "pathological intoxication" expert with pretrial statements and testimony of two witnesses who had observed Petitioner's actions and behavior a few hours before the murder. The trial court dismissed the petition without a hearing. With regard to the counsel ineffectiveness claims, the court found that Petitioner had failed to show "counsel's performance fell below prevailing professional norms" or a "reasonable probability that the result of the trial or sentencing procedures would have been different." The Arizona Supreme Court summarily denied a discretionary petition for review.

Petitioner filed a petition seeking federal habeas relief in 1998. After initial briefing limited to procedural default issues, the Court dismissed a number of Petitioner's claims as procedurally barred, premature, or plainly meritless. (Docs. 92, 160). In their answer regarding the procedural status of Petitioner's claims, Respondents conceded that Petitioner had properly exhausted his ineffectiveness claims (Doc. 37 at 12), and therefore the Court ordered merits briefing on these claims (Doc. 160 at 7, 22). However, after Petitioner filed his merits brief, Respondents asserted for the first time that Petitioner had fundamentally altered one of the exhausted sentencing ineffectiveness claims and that this expanded habeas claim was procedurally barred from federal review. (Doc. 196 at 12-14.) In reply, Petitioner argued that "the claim is the same as that pleaded in state court: trial counsel rendered ineffective assistance when he failed to provide his expert the relevant information he needed to render a reliable opinion when he testified." (Doc. 199 at 21.) Petitioner did not, as an alternative argument, raise any grounds of cause and prejudice or miscarriage of justice to overcome the alleged default.

In a subsequent ruling, the Court determined that it had authority to address the newly-raised procedural default allegation and found that the expanded ineffectiveness claim had not been properly exhausted in state court and was procedurally defaulted. (Doc. 200 at 9-10 & n.7, 13-15.) Although Petitioner had not asserted cause and prejudice or miscarriage-of-

justice grounds to excuse the alleged default, the Court *sua sponte* considered hypothetical arguments, including ineffectiveness by postconviction counsel in failing to fairly present the broadened claim in the state PCR petition. (*Id.* at 15 n.8.)  Pursuant to then existing law, the Court determined that any failure by PCR counsel to raise the claim could not constitute cause. (*Id.*)  Recognizing that the issue was adequate to proceed on appeal, the Court issued a certificate of appealability on the question of whether Petitioner's expanded sentencing ineffectiveness claim was procedurally barred.

On appeal, the Court of Appeals for the Ninth Circuit declined to reach the procedural default issue and affirmed on an alternate ground.  The court found that Petitioner was "independently barred from seeking relief through his expanded allegations of ineffective assistance of counsel because he did not develop the factual basis for this claim in state court. *See* 28 U.S.C. § 2254(e)(2)." *Lopez v. Ryan*, 630 F.3d 1198, 1201 (9th Cir.), *cert. denied*, 132 S. Ct. 577 (2011).

On March 20, 2012, the Supreme Court decided in *Martinez v. Ryan* that in order to "protect prisoners with a potentially legitimate claim of ineffective assistance of trial counsel, it is necessary to modify the unqualified statement in *Coleman* [*v. Thompson*, 501 U.S. 722 (1991),] that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." 132 S. Ct. at 1315.  Consequently, the Court held that in states like Arizona, which require ineffective-assistance-of-trial-counsel claims to be raised in an initial-review collateral proceeding, failure of counsel in an initial-review collateral proceeding to raise a substantial trial ineffectiveness claim may provide cause to excuse the procedural default of such a claim. *Id.*

On April 9, 2012, Petitioner filed the instant motion, arguing that *Martinez* represents a "watershed change in procedural law" that when applied to this case demonstrates that he has cause to overcome the finding of procedural default regarding his expanded sentencing ineffectiveness claim. (Doc. 237 at 4.)  He seeks relief under Rule 60(b)(6) to reopen these proceedings so he can demonstrate that postconviction counsel's ineffectiveness constitutes

1   cause and to establish entitlement to federal habeas relief based on sentencing counsel's

2   alleged ineffectiveness.  In a footnote in his reply brief, Petitioner asserts for the first time

3   that relief also should be granted under Rule 60(b)(5).  (Doc. 248 at 12 n.7.)

4                                          **DISCUSSION**

5          Federal Rule of Civil Procedure 60(b) entitles the moving party to relief from

6   judgment on several  grounds, including the catch-all category "any other reason justifying

7   relief from the operation of the judgment."  Fed. R. Civ. P. 60(b)(6).  A motion under

8   subsection (b)(6) must be brought "within a reasonable time," Fed. R. Civ. P. 60(c)(1), and

9   requires a showing of "extraordinary circumstances." *Gonzalez v. Crosby*, 545 U.S. 524, 535

10   (2005).

11   **I.        Second or Successive Petition**

12          For habeas petitioners, Rule 60(b) may not be used to avoid the prohibition set forth

13   in 28 U.S.C. § 2244(b) against second or successive petitions.  In *Gonzalez*, the Court

14   explained that a Rule 60(b) motion constitutes a second or successive habeas petition when

15   it advances a new ground for relief or "attacks the federal court's previous resolution of a

16   claim *on the merits*." *Id.* at 532.  "On the merits" refers "to a determination that there exist

17   or do not exist grounds entitling a petitioner to habeas corpus relief under 28 U.S.C. §§

18   2254(a) and (d)." *Id.* at n.4.  The Court further explained that a Rule 60(b) motion does not

19   constitute a second or successive petition when the petitioner "merely asserts that a previous

20   ruling which precluded a merits determination was in error—for example, a denial for such

21   reasons as failure to exhaust, procedural default, or statute-of-limitations bar." *Id.*

22          Petitioner asserts that the latter situation applies here because the Court found his

23   expanded ineffectiveness claim to be procedurally defaulted and did not address the claim

24   "on the merits." (Doc. 237 at 9.) Petitioner is correct that under *Gonzalez* a district court has

25   jurisdiction to consider a Rule 60(b) motion challenging a procedural default ruling.

26   However, in this case, the Court is bound by the decision of the Ninth Circuit, which did not

27   reach the procedural default issue and instead found that Petitioner was not entitled to habeas

28                                                - 5 -

1   relief because § 2254(e)(2) precluded consideration of new evidence not presented in state

2   court.

3           Whether the appellate court's § 2254(e)(2) analysis is akin to a merits ruling appears

4   to be an open question.  Assuming the court impliedly found the claim to be meritless based

5   on a lack of supporting evidence, such ruling is now law of the case.  *See Pepper v. United*

6   *States*, 131 S. Ct. 1229, 1250 (2011) ("[W]hen a court decides upon a rule of law, that

7   decision should continue to govern the same issues in subsequent stages in the same case.")

8   (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).  If so, this Court must dismiss the

9   instant motion because it constitutes a successive habeas petition seeking to re-raise a claim

10  presented in a prior petition and denied on the merits.  *See* 28 U.S.C. § 2244(b)(1) ("A claim

11  presented in a second or successive habeas corpus application under section 2254 that was

12  presented in a prior application shall be dismissed."); *Gonzalez*, 545 U.S. at 530.

13  Alternatively, even if the Court construes the Ninth Circuit's ruling as procedural and not on

14  the merits, Petitioner's motion fails because, as discussed in Section II below, *Martinez* does

15  not constitute extraordinary circumstances sufficient to reopen judgment in this case.[1]

16          As a separate matter, before undertaking its alternative analysis of Petitioner's motion,

17  the Court must address the scope of Petitioner's sentencing ineffectiveness claim.  In a

18  footnote within the instant motion, Petitioner asserts that he seeks "review of Claim 1C as

19  presented in the previous proceedings in this Court."  (Doc. 237 at 7 n.1.)  However, the body

20  of the motion suggests that he is trying to pursue a different claim than that presented in

21  either state court or his habeas petition.  Specifically, Petitioner asserts that counsel was

22  ineffective for failing to conduct a meaningful investigation into Petitioner's social history

23

24          [1] The Court also summarily denies Petitioner's request for relief under Rule 60(b)(5).
    That provision permits relief if *prospective* application of a judgment or order "is no longer
25  equitable."  Fed. R. Civ. P. 60(b)(5).  The judgment in this case is not prospective.  *See*
    *Harvest v. Castro*, 531 F.3d 737, 748 (9th Cir. 2008) ("The standard used in determining
26  whether a judgment has prospective application is whether it is executory or involves the
27  supervision of changing conduct or conditions.").

28                                          - 6 -

and to present evidence of Petitioner's "tragic life" as mitigation to the sentencing judge.[2] (Doc. 237 at 20-24.)

In his habeas petition, Petitioner framed Claim 1C as follows:

> Mr. Lopez's attorneys failed to investigate or prepare his case for trial and sentencing, including their failure to properly prepare the psychiatric expert, Dr. Otto Bendheim.

> Petitioner came from a poor, dysfunctional family who suffered severe problems and financial hardships which were exacerbated by his father's abandonment of Petitioner, his seven brothers and his mother when Petitioner was a young boy. R.T. 7/13/90 (p.m.), Ex. 8. Petitioner completed only the tenth grade, and has only a sixth grade reading level. ROA 99. Several of Petitioner's brothers have substance abuse problems, and have been imprisoned, including one brother for a serious assault and two brothers for a homicide.

> The unrefuted testimony at trial established that petitioner was intoxicated the night [of] the homicide. One witness, Yodilia Sabori, saw petitioner just forty-five minutes prior to the homicide. She described Mr. Lopez as:

>> He was different, he was shaking, like shaking, and he was—he acted like he was mad, like everything bothered him. He just couldn't stand still. He was just—he had to hold himself on the wall, stand on the wall, just stand on the pole.

> R.T. 4/21/87 at 73-74. Ms. Sabori's friend Pauline Rodriguez said that Mr. Lopez was "on something" the night of the homicide. R.T. 7/13/90 (p.m.), Ex. 11. Ms. Rodriguez's boyfriend, Raymond "Ralph" Hernandez also believed that Mr. Lopez was intoxicated that night. R.T. 7/13/90 (a.m.), Ex. 3.

> Both Ms. Rodriguez and Mr. Hernandez described Mr. Lopez as a different person when he is under the influence of intoxicants. R.T. 7/13/90 (p.m.), Ex. 11; R.T. 7/13/90 (a.m.), Ex. 3. Ms. Sabori described Mr. Lopez as undergoing a sudden and dramatic change in behavior after asking her if she wanted to get "high" and then going around the corner for approximately five minutes. R.T. 4/21/87 at 72-76; R.T. 7/13/90 (p.m.), Ex. 10. Despite the fact that Dr. Bendheim had reached a conclusion that Mr. Lopez likely suffers from pathological intoxication, the trial attorneys, both at trial and resentencing, failed to provide the testimony or taped interviews of Pauline Rodriguez and Yodilia Sabori to Dr. Bendheim. ROA 116, Ex. 3. This omission on the part of the attorneys severely undermined the testimony and opinions offered by Dr. Bendheim at sentencing. Once provided with this information, Dr.

---

[2] In support Petitioner provides a 47-page affidavit obtained in February 2012 from the National Mitigation Coordinator for the Defender Services Division of the United States Courts detailing the "prevailing professional norms regarding the investigation and preparation of mitigation evidence in capital cases." (Doc. 239-5 at 1.)

Bendheim was even more sure of his diagnosis. ROA 116, Ex. 3. The failure to provide this and other important background information to Dr. Bendheim was ineffective assistance of counsel. *Strickland v. Washington*, *supra*.

Despite information that petitioner had a long term history of substance abuse and exposure to toxic substances, came from a dysfunctional family plagued by violence and neglect, was abandoned by his father at a young age, lived in extreme poverty, had little guidance because his mother was forced to work to support her eight children, had only a tenth grade education and sixth grade reading level, Mr. Lopez's attorney failed to properly prepare his case for trial and sentencing.

Such investigation was necessary for the expert to review in order to establish a base line for Mr. Lopez's cognitive functioning, to compare his cognitive and behavioral functioning when intoxicated to his base line functioning, to determine if intoxication exacerbated any underlying physiological conditions with psychiatric consequences or psychiatric disorders, to determine the presence and course of his addictive disease, to determine the likelihood of the presence, severity and effect of neurologic deficits and the effects of intoxication on those deficits, and to determine any other factors that would have influenced or controlled his thought processes and behavior during the offense. The medical expert also required this information to weigh and assess lay witness reports of Mr. Lopez's behavior surrounding the offense, during interrogation by law enforcement, and during clinical interviews with Mr. Lopez. Counsel was ineffective. *Strickland v. Washington, supra.*

(Doc. 27 at 11-13.)

In its order finding procedural default, the Court determined that Claim 1C was substantially broader than the claim presented in state court:

In his PCR petition, Petitioner alleged ineffective assistance of counsel (IAC) because counsel failed to properly prepare his expert, Dr. Otto Bendheim. (ROA 116 at 9.) Specifically, Petitioner alleged that counsel failed to provide Dr. Bendheim with four documents—the pretrial statements and trial testimony of Pauline Rodriguez and Yodilia Sabori. (*Id.*) Petitioner alleged this was deficient because the statements were available to counsel and they were particularly relevant to the doctor's assessment of pathological intoxication at the time of the crime as these witnesses saw Petitioner's actions and behaviors just a few hours before the murder. (*Id.* at 10.) Petitioner alleged he was prejudiced by counsel's failure because this information was the best evidence in support of pathological intoxication and, if it had been provided to Dr. Bendheim initially, he could have provided a more complete and stronger diagnosis at the time of sentencing. (*Id.* at 10-11.) The allegations in the Petition for Review are essentially identical and focus solely on counsel's failure to provide Dr. Bendheim the statements by Rodriguez and Sabori that were identified in the PCR petition. (PR Dkt. 1 at 11-13.)

By continuing to characterize the claim as he did in state court—that counsel failed to prepare his expert witness—Petitioner attempts to shoehorn in the much broader claim that counsel failed to conduct an exhaustive social

- 8 -

1    history investigation (which he should have used to prepare his expert).
2    However, the claim asserted in state court was a very narrow one, focused
     solely on counsel's failure to provide the expert with four specific documents
3    from percipient witnesses to support his tentative diagnosis of pathological
     intoxication.  In contrast, the claim as alleged in this Court is counsel's failure
4    to conduct a comprehensive investigation of Petitioner's background so that
     the expert could provide a complete and thorough assessment of Petitioner's
5    cognitive functioning, as well as any psychological conditions, addictive
     diseases, or neurological deficits, and any other possible influences on
6    Petitioner's behavior and thought processes at the time of the crime.  (Doc. 28
     at 9-10, 11-13.)  In support of his exhaustion argument, Petitioner contends
7    that his allegations in state court went beyond counsel's failure to provide Dr.
     Bendheim the four documents specifically identified and included counsel's
8    failure to provide "all relevant information"; in support of this proposition,
     Petitioner quotes from his PCR reply brief and his Petition for Review. (Doc.
9    199 at 22.)  This argument is not supported by the record.  The quotes on
     which Petitioner relies regarding "all the relevant evidence" that counsel
10   should have given Dr. Bendheim, when viewed in the context of the entire
     argument in those documents and his whole PCR proceeding, clearly refer to
11   the statements by Rodriguez and Sabori that were relevant to his assertion of
     pathological intoxication not to potentially mitigating background information;
12   they do not reference additional evidence never investigated. (ROA 116 at 9-
     11; ROA 138 at 3; PR Dkt. 1 at 11-13.)

13   (Doc. 200 at 13-14.)

14        The Ninth Circuit similarly found that Claim 1C was broader than the claim raised in

15   state court.  "Coupled with his claim regarding the two witnesses, Lopez newly alleged that

16   counsel failed to furnish Dr. Bendheim with a broad range of biographical data and family

17   and social history that were necessary for a proper diagnosis." *Lopez*, 630 F.3d at 1204.  In

18   finding that Petitioner was barred from relief under 28 U.S.C. § 2254(e)(2), the Court noted

19   that Petitioner had not been diligent in developing his claim that counsel was ineffective in

20   "failing to investigate Lopez's personal history and to furnish Dr. Bendheim with those

21   facts." *Id.* at 1206.

22        Neither this Court nor the Ninth Circuit construed Petitioner's expanded habeas claim

23   as asserting ineffectiveness based on a general failure to investigate Petitioner's background

24   and to present such evidence as stand-alone mitigation to the sentencer.  Rather, both courts

25   found that Petitioner's claim, although broader than the claim presented in state court, was

26   limited to a failure to investigate and provide background information to Petitioner's

27   psychiatric expert.

28                                         - 9 -

1    To recap, this Court found procedurally barred Petitioner's claim of ineffectiveness

2    based on counsel's failure to investigate *and provide to Dr. Bendheim* information

3    concerning Petitioner's personal history.  The Court did not rule "on the merits" of this claim

4    and instead limited its merits analysis to counsel's failure to provide Dr. Bendheim with the

5    statements and testimony of Rodriguez and Sabori.  Assuming the Ninth Circuit also did not

6    resolve Petitioner's expanded claim "on the merits," this Court has jurisdiction to consider

7    Petitioner's Rule 60(b) motion, free of the constraints imposed by 28 U.S.C. § 2244(b) upon

8    successive petitions, only to the extent Petitioner seeks to reopen judgment to revisit the

9    procedurally barred aspect of Claim 1C.  *See Ruiz v. Quarterman*, 504 F.3d 523, 526 (5th

10   Cir. 2007) (finding § 2244(b) inapplicable where Rule 60(b) motion sought to reopen

11   judgment on procedurally barred claim).

12   To the extent Petitioner seeks relief under Rule 60(b) to assert generally that counsel's

13   representation at resentencing was ineffective because he failed to investigate *and present*

14   *to the sentencing judge* evidence of Petitioner's background and upbringing (separate from

15   presenting such evidence to Dr. Bendheim to aid diagnosis of Petitioner), the Court finds that

16   the motion advances a new ground for relief.  As such, this aspect of Petitioner's motion is

17   the equivalent of a second or successive petition, and the Court may not consider Petitioner's

18   general claim of ineffectiveness based on counsel's "failure to present mitigating evidence

19   supporting a sentence less than death" absent authorization from the Ninth Circuit.  *See* 28

20   U.S.C. § 2244(b)(3)(A).

21          **II.    Extraordinary Circumstances**

22   The Court turns now to the issue of whether in this case *Martinez* constitutes an

23   extraordinary circumstance justifying relief under Rule 60(b)(6) to reconsider the Court's

24   procedural bar ruling as to the expanded aspect of Claim 1C.  When a petitioner seeks post-

25   judgment relief based on an intervening change in the law, the Ninth Circuit has directed

26   district courts to balance numerous factors on a case-by-case basis.  *Phelps v. Alameida*, 569

27   F.3d 1120, 1133 (9th Cir. 2009).  These include but are not limited to: (1) whether "the

28                                                    - 10 -

1  intervening change in the law . . . overruled an otherwise settled legal precedent;" (2)

2  whether the petitioner was diligent in pursuing the issue; (3) whether "the final judgment

3  being challenged has caused one or more of the parties to change his position in reliance on

4  that judgment;" (4) whether there is "delay between the finality of the judgment and the

5  motion for Rule 60(b)(6) relief;" (5) whether there is a "close connection" between the

6  original and intervening decisions at issue in the Rule 60(b) motion; and (6) whether relief

7  from judgment would upset the "delicate principles of comity governing the interaction

8  between coordinate sovereign judicial systems." *Id.* at 1135-40. After consideration of these

9  varied factors, the Court determines that the balance weighs against granting post-judgment

10  relief.

11       Change in the Law

12       The first factor is whether the intervening change in the law overruled otherwise

13  settled legal precedent.  The decisions in *Gonzalez v. Crosby* and *Phelps v. Alameida* lend

14  guidance for applying this factor.

15       In *Gonzalez*, the prisoner's habeas petition was dismissed as time barred when the

16  district court concluded that an untimely successive motion for state postconviction relief

17  was not a "properly filed" application sufficient to toll the limitations period under 28 U.S.C.

18  § 2244(d)(2).  545 U.S. at 527.  Seven months after the appellate court denied a certificate

19  of appealability on the issue, the Supreme Court held in *Artuz v. Bennett*, 531 U.S. 4 (2000),

20  that an application for state postconviction relief can be "properly filed" even if the state

21  court dismissed it as procedurally barred.  Gonzalez sought to reopen judgment, and the

22  Supreme Court ultimately determined that *Artuz* did not constitute an extraordinary

23  circumstance justifying relief under Rule 60(b)(6).  In doing so, it noted that the district

24  court's  analysis of the limitations period "was by all appearances correct under the Eleventh

25  Circuit's then-prevailing interpretation of 28 U.S.C. § 2244(d)(2)."  545 U.S. at 536.  The

26  Court further observed that "[i]t is hardly extraordinary that subsequently, after petitioner's

27  case was no longer pending, this Court arrived at a different interpretation." *Id.*

28

1    In *Phelps*, the Ninth Circuit determined that a habeas petitioner was entitled to relief

2    from judgment based on an intervening change in circuit law relevant to determining finality

3    of a California postconviction petition for the purpose of tolling the limitations period under

4    § 2244(d)(2). In doing so, the court observed that "the change in the law worked in this case

5    . . . did not upset or overturn a settled legal principle" as did the change in the law at issue

6    in *Gonzalez*. 569 F.3d at 1136. Rather, the core disputed issue in Phelps's case did not

7    become settled until fifteen months after his appeal became final and was "decidedly

8    *un*settled" when the petition was before the district court. *Id.* This, the court reasoned,

9    distinguished *Gonzalez* and cut in favor of granting relief.

10    Comparing these two cases to the situation here, the Court readily concludes that

11    Petitioner's case is more akin to *Gonzalez* than *Phelps*. As in *Gonzalez*, the procedural bar

12    ruling now being challenged was correct under then-prevailing law. As Petitioner

13    acknowledges, *Martinez* represents a significant shift in habeas procedural law. Prior to

14    *Martinez*, both Supreme Court and Ninth Circuit caselaw held that an attorney's ignorance

15    or inadvertence in a state postconviction proceeding did not qualify as cause to excuse a

16    procedural default. *See Coleman*, 501 U.S. at 736; *Bonin v. Calderon*, 77 F.3d 1155, 1159

17    (9th Cir. 1996). In *Martinez*, the Court carved out a narrow exception to the rule in *Coleman*,

18    recognizing for the first time that inadequate postconviction counsel may serve as cause to

19    excuse a defaulted trial ineffectiveness claim when such claims may be raised only in a

20    postconviction proceeding. 132 S. Ct. at 1315. Thus, the law was well settled that

21    ineffective assistance of postconviction counsel could not serve as cause when this Court *sua*

22    *sponte* considered and rejected hypothetical cause arguments for the default of expanded

23    Claim 1C, including ineffectiveness by postconviction counsel. This factor weighs against

24    reconsideration. *See Adams v. Thaler*, No. 12-70010, 2012 WL 1415088 (5th Cir. Apr. 25,

25    2012) (finding that *Martinez* is "simply a change in decisional law" and does not constitute

26    an extraordinary circumstance justifying postconviction relief).

27    Diligence

28

1    The second factor, whether Petitioner was diligent in pursuing the issue, also weighs

2  against reconsideration.  This is not a case, such as *Phelps*, where the petitioner "pressed all

3  possible avenues of relief" on the identical legal position ultimately adopted in a subsequent

4  case as legally correct.  569 F.3d at 1137.  Indeed, at no time prior to the instant motion did

5  Petitioner urge ineffective assistance of postconviction counsel as cause to excuse the default

6  of his expanded sentencing ineffectiveness claim.

7    In his initial response to Respondents' belated assertion of default, Petitioner argued

8  only that the claim had been fully exhausted and was not substantially altered compared to

9  that presented in state court.  (Doc. 199 at 13-23.)  In a motion for reconsideration from the

10  Court's order finding the expanded aspect of Claim 1C defaulted, Petitioner argued that the

11  Court had erred in not finding that Respondents' admission of exhaustion in their initial

12  answer constituted an express waiver of any exhaustion defense.  (Doc. 202 at 2-11.)  On

13  appeal, Petitioner again argued that the claim had been fully exhausted and that this Court

14  erred in *sua sponte* revisiting the exhaustion issue following Respondents' initial concession.

15  *Lopez*, 630 F.3d at 1205 & n.6.  Petitioner did not assert to either this Court or the Ninth

16  Circuit any alternative arguments based on cause and prejudice or fundamental miscarriage

17  of justice to excuse the default.

18    In *Gonzalez*, the Supreme Court cited the petitioner's lack of diligence as a second

19  factor militating against Rule 60(b)(6) relief.  The Court observed that the petitioner had

20  neither raised the issue addressed in *Artuz* in his application for a certificate of appealability

21  before the circuit court, nor sought rehearing or certiorari from the appellate court's COA

22  denial, despite the fact *Artuz* had been decided eight days after that denial.  545 U.S. at 537.

23  "This lack of diligence confirms that *Artuz* is not an extraordinary circumstance justifying

24  relief from the judgment in petitioner's case."  *Id.*

25    Here, not only did Petitioner fail to advance the legal principle at issue in *Martinez*,

26  he never challenged this Court's finding that ineffectiveness of postconviction counsel could

27  not constitute cause for the default of the expanded sentencing ineffectiveness claim.  This

28

1    lack of diligence cuts against Petitioner.

2        Reliance

3        The third factor is whether granting relief under Rule 60(b) would "'undo the past,

4    executed effects of the judgment,' thereby disturbing the parties' reliance interest in the

5    finality of the case." *Phelps*, 569 F.3d at 1137 (quoting *Ritter v. Smith*, 811 F.2d 1398, 1402

6    (11th Cir. 1987)).  Post-judgment relief "is less warranted when the final judgment being

7    challenged has caused one or more of the parties to change his legal position in reliance on

8    that judgment." *Id.* at 1138.

9        In *Phelps*, the court found that neither party had relied on the finality of the district

10   court's dismissal of the petition as time-barred such that their legal position had changed due

11   to the court's judgment.  "To the contrary, when Phelps' petition was dismissed, his federal

12   case simply ended: Phelps remained in prison, and the State stopped defending his

13   imprisonment." *Id.*  The court reasoned that there were no "past effects" of the judgment that

14   would be disturbed if the case were reopened for consideration on the merits of the habeas

15   petition because "the parties would simply pick up where they left off." *Id.*  Therefore, the

16   lack of reliance weighed in the petitioner's favor.

17       The same cannot be said here.  When Petitioner's case became final, the State of

18   Arizona sought and obtained a warrant of execution from the Arizona Supreme Court to

19   carry out Petitioner's sentence; the execution is set for May 16.  "Both the State and victims

20   of crime have an important interest in the timely enforcement of a sentence." *Hill v.*

21   *McDonough*, 547 U.S. 573, 584 (2006).  As explained by the Supreme Court in *Calderon v.*

22   *Thompson*, a capital case in which the appellate court had sought to recall its mandate for the

23   purpose of revisiting the merits of the prisoner's habeas petition:

24           A State's interests in finality are compelling when a federal court of
             appeals issues a mandate denying federal habeas relief.  At that point, having
25           in all likelihood borne for years "the significant costs of federal habeas
             review," the State is entitled to the assurance of finality.  When lengthy federal
26           proceedings have run their course and a mandate denying relief has issued,
             finality acquires an added moral dimension.  Only with an assurance of real
27           finality can the State execute its moral judgment in a case.  Only with real

28                                              - 14 -

1
2
3

> finality can the victims of crime move forward knowing the moral judgment
> will be carried out.  To unsettle these expectations is to inflict a profound
> injury to the "powerful and legitimate interest in punishing the guilty," an
> interest shared by the State and the victims of crime alike.

523 U.S. 538, 556 (1998) (citations omitted).  When the State's and victims' interests in

finality are viewed in light of Petitioner's lack of diligence on the *Martinez* issue, the Court

is compelled to conclude that the State's reliance on the Court's judgment weighs against

granting post-judgment relief to assess whether, under *Martinez*, Petitioner could establish

cause and prejudice to overcome the default of his expanded sentencing ineffectiveness claim.

Delay

The fourth factor looks at whether a petitioner seeking to have a new legal rule

applied to an otherwise final case has petitioned the court for reconsideration "with a degree

of promptness that respects the strong public interest in timeliness and finality." *Phelps*, 569

F.3d at 1138 (internal quotation omitted).  Here, the motion was filed just three weeks after

*Martinez* was decided.  Petitioner did not delay seeking relief based on *Martinez*, and this

factor weighs in his favor.

Close Connection

The fifth factor "is designed to recognize that the law is regularly evolving." *Id.* at

1139.  The mere fact that tradition, legal rules, and principles inevitably shift and evolve over

time "cannot upset all final judgments that have predated any specific change in the law."

*Id.*  Accordingly, the nature of the change is important and courts should examine whether

there is a "close connection" between the original and intervening decision at issue in a Rule

60(b)(6) motion.  *Id.*

In *Phelps*, the intervening change in the law directly overruled the decision for which

reconsideration was sought.  Additionally, the intervening precedent "resolved a conflict

between competing and co-equal legal authorities."  *Id.* (internal quotation omitted).  As

already addressed regarding the first factor, the change in the law at issue here overruled long

settled precedent.  More critically, there is no close connection between this Court's cause

- 15 -

1  determination and the decision in *Martinez* because the appeals court affirmed this Court's

2  judgment on different grounds.

3       In *Lopez*, the Ninth Circuit expressly declined to address the propriety of this Court's

4  procedural default ruling, finding instead that Petitioner was separately barred from relief by

5  28 U.S.C. § 2254(e)(2).  630 F.3d at 1202, 1205-06.  The court's ruling did not rest on

6  procedural default grounds and did not reach the question of cause.  Thus, there is no "close

7  connection" between the final judgment in this case and the *Martinez* decision, which

8  provides a new cause argument for procedurally defaulted counsel ineffectiveness claims.

9  Indeed, addressing cause would be an exercise in futility.  This Court is bound by the Ninth

10  Circuit's determination that Petitioner was not diligent in developing the expanded

11  ineffectiveness claim in state court, and *Martinez* does not address postconviction counsel

12  ineffectiveness in the context of § 2254(e)(2)'s diligence requirement.[3]  The lack of

13  connection between Petitioner's case and *Martinez* weighs heavily against reconsideration.

14       <u>Comity</u>

15       The last factor concerns the need for comity between independently sovereign state

16  and federal judiciaries.  *Phelps*, 569 F.3d at 1139.  The Ninth Circuit has determined that

17  principles of comity are not upset when an erroneous legal judgment, if left uncorrected,

18  "would prevent the true merits of a petitioner's constitutional claims from ever being heard."

19  *Id.* at 1140.  For example, in *Phelps*, the district court dismissed the petition as untimely, thus

20  precluding any federal habeas review of the petitioner's claims.  The court found that this

21  favored the grant of post-judgment relief in Phelps's case because dismissal of a first habeas

22

---

23       [3] Even were the Court inclined to consider whether the rationale of *Martinez* extends

24  to the diligence requirement of § 2254(e)(2), this Court is bound by the Supreme Court's
   directive in *Williams v. Taylor*, that "a failure to develop the factual basis of a claim is not

25  established unless there is a lack of diligence, or some greater fault, attributable to the
   prisoner *or the prisoner's counsel*."  529 U.S. 420, 432 (2000) (emphasis added).  In

26  *Williams* itself, the Supreme Court found that state postconviction counsel's failure to

27  investigate an available psychiatric report constituted a lack of diligence.  *Id.* at 438-40.

28                                   - 16 -

1    petition "denies the petitioner the protections of the Great Writ entirely."  *Id.*

2        Here, the Court's judgment did not preclude review of all of Petitioner's federal

3    constitutional claims.  A number of the claims, including counsel ineffectiveness for failing

4    to provide Dr. Bendheim with the statements and testimony of two relevant witnesses, were

5    addressed on the merits in both the district and appellate courts.[4]  While the Court declined

6    to reach the merits of the expanded sentencing ineffectiveness claim based on Petitioner's

7    failure to properly exhaust the claim in state court, the Ninth Circuit held that Petitioner was

8    separately barred from relief under 28 U.S.C. § 2254(e)(2) because he had not been diligent

9    in developing the claim.  Given these circumstances, the comity factor does not favor

10   Petitioner.

11       Conclusion

12       Having evaluated each of the factors set forth in *Gonzalez* and *Phelps* in light of the

13   particular facts of this case, the Court concludes that Petitioner's motion to reopen judgment

14   fails to demonstrate the extraordinary circumstances necessary to grant relief under Rule

15   60(b)(6). The Court's determination that ineffectiveness of postconviction counsel could not

16   constitute cause was at that time legally correct under longstanding caselaw, and the State

17   of Arizona has a strong interest in carrying out Petitioner's sentence.  In addition, Petitioner

18   never previously raised this issue, and the court of appeals affirmed on an entirely different

19

20       [4] In affirming the denial of relief on this claim, the Ninth Circuit was "not convinced"
21   that a more definitive diagnosis from Dr. Bendheim "would have changed the outcome of the
     sentencing proceeding."  *Lopez*, 630 F.3d at 1209.  The court noted:
22

23       The new evidence would have done little to refute Dr. Dean's contrary
         assessment that Lopez did not suffer from pathological intoxication.  As Dr.
24       Dean pointed out, pathological intoxication is an extremely rare condition,
         Lopez did not exhibit any of the predisposing factors, and the evidence from
25       his criminal file indicated that he did not react pathologically to alcohol or
         show reactions within the typical timeframe after drinking.
26

27   *Id.*

28                                           - 17 -

1   ground.  Thus, reopening the case to revisit this Court's cause findings would be futile.

2         **III.    Second-in-Time Habeas Petition**

3         As an alternative, Petitioner asks the Court to treat his Rule 60(b) motion as a proper

4   second-in-time habeas application.  Petitioner correctly notes that the Supreme Court "has

5   declined to interpret 'second or successive' as referring to all § 2254 applications filed

6   second or successively in time, even when the later filings address a state-court judgment

7   already challenged in a prior § 2254 application." *Panetti v. Quarterman*, 551 U.S. 930, 944

8   (2007); *see, e.g.*, *Slack v. McDaniel*, 529 U.S. 473, 485-86 (2000) (concluding that a petition

9   filed after district court dismissed an initial petition for failure to exhaust state remedies is

10  not "second or successive" petition); *Stewart v. Martinez-Villareal*, 523 U.S. 637, 643-45

11  (1998) (holding that a second-in-time petition is not "second or successive" when it raises

12  a claim previously dismissed as premature).

13        Petitioner argues that his second-in-time petition is not successive because his

14  sentencing ineffectiveness claim "has only now become ripe because only now may he

15  establish cause [based on *Martinez*] to overcome the procedural bar." (Doc. 237 at 42.)  The

16  Court declines to accept Petitioner's novel proposition that a previously ripe claim raised and

17  dismissed with prejudice in an initial petition may be re-raised in a new petition based on a

18  change in the law.  Accordingly, Petitioner's alternative request is denied.  *See* 28 U.S.C. §

19  2244(b)(1) ("A claim presented in a second or successive habeas corpus application under

20  section 2254 that was presented in a prior application shall be dismissed.").

21                     **CERTIFICATE OF APPEALABILITY**

22        To the extent a certificate of appealability is needed for an appeal from this Order, *see*

23  *United States v. Washington*, 653 F.3d 1057, 1065 n.8 (9th Cir.) (2011) (noting open question

24  whether COA required to appeal denial of legitimate Rule 60(b) motion), *cert. denied*, 132

25  S. Ct. 1609 (2012), the Court finds that reasonable jurists could debate its resolution of

26  Petitioner's Rule 60(b)(6) motion.  *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S.

27  473, 484 (2000).  Accordingly, the Court grants a certificate of appealability on this issue.

28                                    - 18 -

1  Based on the foregoing,

2  **IT IS ORDERED** that Petitioner's Motion for Relief from Judgment Pursuant to Fed.

3  R. Civ. P. 60(b)(6) or in the Alternative Petition for Writ of Habeas Corpus (Doc. 237) is

4  **DENIED**.

5  DATED this 30th day of April, 2012.

6

7

8                              Stephen M. McNamee
                        Senior United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                              - 19 -